1
2
3
4
5
6            **UNITED STATES DISTRICT COURT**
7              **DISTRICT OF NEVADA**
8
9   RODNEY EUGENE DAVIS,
10          Petitioner,                    Case No. 2:05-cv-01179-KJD-NJK
11   vs.                                   **ORDER**
12   WARDEN, et al.,
13          Respondents.
14
15          Before the court are the third amended petition for writ of habeas corpus (#53), respondents'
16   motion to dismiss (#57), petitioner's opposition (#64) and supplement (#71), and respondents' reply
17   (#65) and supplement (#76).  The court finds that petitioner has procedurally defaulted five grounds
18   for relief, and the court grants the motion to dismiss.
19          After a jury trial, the state district court convicted petitioner of attempted murder with the
20   use of a deadly weapon and first-degree kidnaping with the use of a deadly weapon.  For the count
21   of attempted murder with the use of a deadly weapon, the court sentenced petitioner to prison for a
22   minimum term of 72 months and a maximum term of 240 months for attempted murder plus an
23   equal and consecutive sentence for the use of a deadly weapon.  For the count of first-degree
24   kidnaping with the use of a deadly weapon, the court sentenced petitioner to life imprisonment with
25   parole eligibility starting after 5 years for kidnaping plus an equal and consecutive sentence for the
26
27
28

use of a deadly weapon.  Ex. 14 (#25).[1]  Petitioner's direct appeal and his first state post-conviction habeas corpus petition were unsuccessful.  Petitioner then commenced this action.  The court appointed counsel, who filed a first amended petition (#23) and a second amended petition (#36). The court found that petitioner had not exhausted his available state-court remedies for grounds 1, 5, 6, 7, and 9 of the second amended petition.  Order (#44).  The court stayed the action while petitioner returned to state court to exhaust those grounds.  Order (#49).  Petitioner then filed another post-conviction habeas corpus petition in state court.  Ex. 67 (#54).  The state district court dismissed the petition as untimely and successive.  Ex. 76 (#54).  Petitioner appealed.  The Nevada Supreme Court affirmed the dismissal of the petition because the petition was untimely pursuant to Nev. Rev. Stat. § 34.726(1) and successive and abusive of the writ pursuant to Nev. Rev. Stat. § 34.810.  Ex. 85 (#54).  Petitioner then returned to this court with his third amended petition (#53). Respondents have moved to dismiss grounds 1, 5, 6, 7, and 9 as procedurally defaulted.

A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state-law ground that is independent of the federal question and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 730-31 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986).  The grounds for dismissal upon which the Nevada Supreme Court relied in this case are adequate and independent state rules.  Vang v. Nevada, 329 F.3d 1069, 1074 (9th Cir. 2003) (Nev. Rev. Stat. § 34.810); Loveland v. Hatcher, 231 F.3d 640 (9th Cir. 2000) (Nev. Rev. Stat. § 34.726); Moran v. McDaniel, 80 F.3d 1261 (9th Cir. 1996) (same).

---

[1]The jury also found petitioner guilty of aiming a firearm at a human being.  Ex. 12 (#25). The trial court dismissed that count notwithstanding the verdict.  Ex. 10, at 6 (#25).

1    To demonstrate cause for a procedural default, the petitioner must "show that some objective

2  factor external to the defense impeded" his efforts to comply with the state procedural rule.  Carrier,

3  477 U.S. at 488.

4    To show prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial

5  created a possibility of prejudice, but that they worked to his actual and substantial disadvantage,

6  infecting his entire trial with error of constitutional dimensions.'"  Carrier, 477 U.S. at 494 (quoting

7  United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis in original).

8    Petitioner's first argument for cause is based upon the denial of his first state post-conviction

9  habeas corpus petition.  The state district court denied the petition without appointing counsel or

10  conducting an evidentiary hearing.  The state district court did hold a hearing outside petitioner's

11  presence, to announce the denial of the petition.  On appeal, the Nevada Supreme Court affirmed.

12    The court agrees with respondents that petitioner has not demonstrated prejudice.  The

13  relevant statute, Nev. Rev. Stat. § 34.770, does not require a state district court to conduct an

14  evidentiary hearing.  The statute leaves an evidentiary hearing to the discretion of the state district

15  court.  The Nevada Supreme Court noted that petitioner had failed to allege sufficient facts or to

16  demonstrate prejudice to support his claims.  Ex. 53, at 2-3 (#28).  In state court, as in this court, the

17  petitioner in a post-conviction proceeding has the burden of proof.  If a petition contains vague

18  allegations unsupported by facts, the petitioner cannot count on the state district court appointing

19  counsel and conducting an evidentiary hearing to further develop his claims.  It is more likely that

20  the state district court will deny the petition, as happened in this case.  This court does not sit in

21  review of whether the state courts followed their post-conviction procedures correctly.  The state

22  court and the Nevada Supreme Court necessarily determined that an evidentiary hearing was not

23  necessary, and that is the end of the matter for this court.  The denial of the 2004 petition is not

24  cause to excuse the procedural default.

25    The court also is not convinced that the hearing outside petitioner's presence also amounted

26  to cause to excuse the procedural default.  The state district court held the hearing simply to

27  announce that the petition was denied and to tell the respondents to prepare the order.  Nothing

28  would have changed with petitioner's presence at the hearing.

1    Petitioner's second argument for cause is that he was denied a copy of the transcript of the
2    sentencing hearing, which kept him from developing claims about the sentencing hearing.  After his
3    direct appeal, petitioner filed a proper-person motion for transcripts at state expense.  Petitioner was
4    still represented by trial counsel, who then filed a motion to withdraw.  Ex. 32 (#26).  The state
5    district court granted the motion to withdraw, but it never ruled upon petitioner's transcript motion.
6    Petitioner's argument for cause is relevant to grounds 6 and 9 of the third amended petition.  Ground
7    9 is a claim that the trial judge conducted the hearing after pre-determining petitioner's sentence for
8    first-degree kidnaping, and ground 6 is a claim that trial counsel was ineffective for failing to
9    investigate facts for sentencing and to advocate on petitioner's behalf at sentencing.  Petitioner was
10   unable to obtain a copy of the sentencing transcript until after he filed the first amended petition.
11   See Ex. 13 (#31).  However, after reviewing the transcript of the hearing, the court is not convinced
12   that petitioner was unable to present the claims in grounds 6 and 9 without that transcript.  Petitioner
13   was present, and vocal, at the sentencing hearing.  His counsel was at least a half-hour late to the
14   hearing, which was an unusual occurrence.  In other words, the hearing was memorable enough that
15   petitioner could have raised something that at least resembled grounds 6 and 9 in his first state
16   habeas corpus petition, and then perhaps the state district court might have ordered the transcripts.
17   Petitioner's lack of transcripts of the sentencing hearing does not amount to cause to excuse the
18   procedural default of grounds 6 and 9.

19   Petitioner's third argument for cause is that appellate counsel provided ineffective
20   assistance, because appellate counsel only raised one issue on direct appeal, sufficiency of the
21   evidence used to convict petitioner.  The defect with this argument is that it is also the subject of
22   ground 5 of the third amended petition, and ground 5 itself is procedurally defaulted.  The court
23   already has determined above that the denial of the first state habeas corpus petition was not cause
24   to excuse the procedural default of the grounds at issue, including ground 5.  A procedurally
25   defaulted claim cannot be cause to excuse the procedural defaults of other claims.  Edwards v.
26   Carpenter, 529 U.S. 446, 452-53 (2000).  Therefore, petitioner's third argument fails.

27   Petitioner's fourth argument for cause, for which the court directed supplemental briefing, is
28   that he was proceeding pro se in his first state habeas corpus petition.

-4-

[W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. Miller–El v. Cockrell, 537 U.S. 322 (2003) (describing standards for certificates of appealability to issue).

Martinez v. Ryan, 132 S. Ct. 1309 (2012) (emphasis added). In Nevada, unless the district court conducted an evidentiary hearing before the direct appeal, a claim of ineffective assistance of counsel must be raised in a post-conviction habeas corpus petition. Gibbons v. State, 634 P.2d 1214, 1216 (Nev. 1981). The first circumstance in Martinez applies to petitioner, because he was not appointed counsel in his first state post-conviction proceedings. However, Martinez can apply only to grounds 1, 6, and 7, because only those grounds are claims of ineffective assistance of trial counsel. Ground 5, a claim of ineffective assistance of appellate counsel, and ground 9, a claim of trial-court error, do not fall within the scope of Martinez.

Petitioner's argument that the grounds of ineffective assistance of trial counsel are substantial consists of quoting the court's order staying the action, in which the court noted that the grounds have potential merit. See Order, at 1 (#49). The court does not know whether the "potentially meritorious" standard for granting a stay in Rhines v. Weber, 544 U.S. 269, 278 (2005), is the same as the standard in Martinez that a procedurally defaulted claim of ineffective assistance of counsel be substantial. More importantly, the court will not lock itself into its determination regarding a stay when the court had no idea at the time of its determination that the Supreme Court of the United States later would determine that the lack of appointed counsel in the initial post-conviction proceedings could be cause to excuse the procedural default of claims of ineffective assistance of trial counsel. Petitioner needed to do more than to quote the court's words back at it. Respondents, on the other hand, have spent some effort to show that petitioner's claims of ineffective assistance of trial counsel are insubstantial.

A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v.

1  <u>Washington</u>, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced

2  the defendant such that "there is a reasonable probability that, but for counsel's unprofessional

3  errors, the result of the proceeding would have been different," <u>id.</u> at 694.

4      The jury was presented with two conflicting narratives.  Angela Davenport testified that she

5  came to live at petitioner's apartment in Las Vegas a few days before the date in question.  On

6  October 11, 2002, she was arrested for prostitution, spent some time in jail, and was released on her

7  own recognizance.  Petitioner then drove her to the Wild Wild West casino for her to practice her

8  trade, without success.  After picking Davenport up, petitioner became convinced that Davenport

9  was working with the police.  He had two other prostitutes, Sabrina Bradley and Deborah Simpson,

10 beat Davenport.  He glued her lips shut, then forced them open and told her to drink some

11 concoction.  Finally, he drove with Davenport, Bradley, and Simpson toward Boulder City.  Along

12 the way, Simpson left the vehicle.  Petitioner arrived at what he thought was a cliff and forced

13 Davenport over it at gunpoint.  The "cliff" actually was a hillside that had been shaped, excavated,

14 and graded for construction of houses.  Davenport survived with only scrapes and bruises.

15     The defense presented a different narrative.  Both Bradley and petitioner testified.  Petitioner

16 admitted that he was a drug user and an occasional drug dealer; he lost his commercial driver's

17 license because of his drug use.  Davenport had come to live with petitioner a few days before

18 October 11, 2002.  On that date, Davenport and a woman known as "Chocolate" came to the

19 apartment.  Chocolate told petitioner that Davenport and the man who drove them to the apartment

20 were conspiring to rob him.  Petitioner grabbed his gun, told everybody to remain still, and went

21 outside.  He beat and threatened a man outside.  Petitioner then returned to the apartment and voiced

22 his suspicions.  According to petitioner, Bradley and Simpson then beat Davenport.  Bradley denied

23 beating Davenport.  Petitioner then said that he did not want Davenport living in the apartment any

24 longer.  He, Davenport, Bradley, and Simpson then drove to the Luxor hotel and casino.  Petitioner

25 was dropped off so that he could work shining shoes.  Davenport, Bradley, and Simpson then drove

26 around, trying to find a place that Davenport said she knew.  After a while, Bradley and Simpson

27 decided that Davenport was playing them for fools, and they left her at a store.

28

1    In ground 1, petitioner claims that trial counsel provided ineffective assistance by advising

2  petitioner to "go up and tell your story" without preparation for direct examination or cross

3  examination.  First, nothing in the record indicates that trial counsel ever said any such thing.

4  Rather, after the jury gave its verdict and was discharged, the <u>judge</u> stated:

5          The Court has a little bit of business to do.

6          One is I want to make an observation that lest the Supreme Court doesn't think I have the
        slightest idea of what I am doing, that there was a lot of evidence that came in in [sic] this
7        trial that, by all accounts, would not have come in had there been an objection.

8          It was my considered opinion that we had experienced counsel, who just made strategic
        decisions to try their case that way.
9
        <u>Defense counsel made a strategic decision to let the defendant tell his story and let him own</u>
10       <u>up to minor crimes and other things, with the theory that maybe the jury would believe he's</u>
        <u>honest and not do this.</u>
11
        And the District Attorney didn't do anything to try to keep from the jury all the foibles of the
12       victim; and had there been objections, of course, much of that wouldn't have come in.

13        But again, I don't think it was a lack of competence of counsel's part.  It was a concerted
        trial strategy and it was to that end that the Court didn't intervene sua sponte.
14

15 Ex. 10, at 5-6 (#25) (emphasis added).  This is not a claim that counsel advised petitioner poorly

16 that he should testify.  Petitioner wanted to testify.  Ex. 7, at 89-91 (#24); Ex. 9, at 130, 132 (#25).

17 Petitioner points to five areas of his testimony:  His self-identification as a drug dealer, his use of a

18 gun to threaten a man whom he believed was conspiring with the victim to rob him, his aiming of a

19 gun at the victim,[2] being a person with a violent temper prone to physical attacks upon the people he

20 believes have wronged him, and acknowledging that prostitutes and drug users are prone to lie.

21        There was no evidence on how counsel advised petitioner to testify, or even counsel's advice

22 whether petitioner should testify.  Once petitioner decided to testify, counsel faced some constraints.

23 He could not present petitioner as a law-abiding citizen.  That was untrue, and the prosecution

24 would have cross-examined petitioner relentlessly.  Furthermore, based upon petitioner's comments

25 after jury selection, he had a firm desire to give his side of the story, warts and all, to the jury,

26

27        [2]To the extent that this testimony might have cemented a verdict against petitioner for
   aiming a gun at a person, he suffered no prejudice, because the trial court dismissed that charge
28 notwithstanding the verdict.

1  regardless of what counsel advised.  See Ex. 7, at 89-91 (#24).  The matters on which he testified

2  during direct examination, though damaging to him, also, if believed, would have cast doubt upon

3  Davenport's testimony.  Petitioner testified that he trafficked in drugs, but he also testified that

4  Davenport used the drugs that he supplied.  Petitioner threatened a man, and he might have pointed

5  his gun at Davenport, but upon his belief that Davenport was conspiring with the man to rob him.

6  Petitioner stated that prostitutes, like his other defense witness, and drug dealers are prone to lie, but

7  Davenport also was a prostitute, and thus, in his mind, had the same reason to lie.  Petitioner was

8  presenting to the jury the possibility that Davenport was trying to steal from him, or at least that

9  Davenport was a source of friction in his apartment, that he wanted her out of the apartment, and

10  that her complaint to the police was her way of getting revenge.  However, the jury did not believe

11  him.  Then, once petitioner decided he was going to testify on those matters, he was open to cross-

12  examination.  Now, in this court, petitioner does not allege what counsel should have done to

13  prepare petitioner.  The court finds that ground 1 does not present a substantial claim of ineffective

14  assistance of counsel.

15       Ground 6 is a claim that trial counsel was ineffective for failing to investigate facts for

16  sentencing and to advocate on petitioner's behalf at sentencing.[3]  First, petitioner notes that defense

17  counsel was around 45 minutes late for the sentencing hearing.  Counsel's only explanation was that

18  he could not find his case file, apparently because somebody in his office sent the file to the wrong

19  department of the state district court.  Ex. 13, at 2 (#31).[4]  The court warned counsel not to do that

20  again.  Id.  Counsel's explanation was baffling, because nothing in the record indicates that he was

21  unable to be in court at the appointed time, or to call the court, and ask for a continuance while he

22

23

---

24  [3]Respondents treat ground 6 as if it also is a claim that counsel provided ineffective
   assistance by failing to investigate the case for trial.  However, petitioner makes that claim in

25  ground 4.  In ground 6, petitioner simply refers to

26  [4]Petitioner was tried in Department VII.  However, his case first was assigned to Department
   XIV, which is where defense counsel's case file was found.  Ex. 1 (#24) (court minutes).  Somebody

27  in counsel's office probably noticed the old department number and sent the file to the wrong
   department.

28  The pre-sentence investigation report suffered from the same problem.  At the top of the first
   page, it stated erroneously that petitioner's case was tried in Department XIV.  Ex. 64 (#28).

1    located his file.  However, nothing in the transcript of the sentencing hearing indicates that the trial

2    judge took out his annoyance upon petitioner.  Second, petitioner argues that counsel, along with the

3    judge and the prosecutor, thought that the only sentence for first-degree kidnaping was life

4    imprisonment with eligibility for parole starting after five years.[5]  The statute also provided for a

5    minimum of five years and a maximum of fifteen years in prison.  See Nev. Rev. Stat. § 200.320(2)

6    (2002).  The judge, prosecutor, and defense counsel actually did know the possible sentences for

7    first-degree kidnaping, because the pre-sentence investigation report listed them.  See Ex. 64, at 1

8    (#28).  Third, petitioner argues that the judge had determined the sentence for petitioner before the

9    hearing.  The judge received the pre-sentence investigation report before the sentencing hearing, and

10   nothing forbade him from thinking about the case before the hearing.  Petitioner argues that if

11   counsel had prepared for the sentencing hearing, he might have argued for a sentence of five to

12   fifteen years for first-degree kidnaping.  Counsel did argue at the hearing to run the sentences for

13   attempted murder and first-degree kidnaping concurrently.  The pre-sentence report and the

14   prosecutor were silent on the matter.  The trial judge agreed with defense counsel, with a

15   qualification:

16            The Court agrees with you that this was one incident and they should be concurrent;
              however, the Court thinks that there should be some consequence for attempt murder.

17
18            I mean, had he just taken her out and kidnapped her and not thrown her off the cliff, he'd
              still be doing five to life times two.

19   Ex. 13, at 8 (#31).  The converse applies equally, although the trial judge did not state it that way.  If

20   the trial judge sentenced petitioner to five to fifteen years in prison for first-degree kidnaping, then

21   the kidnaping sentence would have expired before the attempted murder sentence expired.  If the

22   trial judge wanted petitioner to pay a price for both crimes, and if the trial judge found that running

23   the sentences for the counts consecutively was too harsh, then the trial judge had no other way to

24   structure the sentences than the way that he did.  Better arguments by counsel would not have

25

26            [5]The court discusses only the sentences for the primary offenses, because those were the only
     sentences in which the court had any discretion.  The jury found petitioner guilty of using a deadly
27   weapon in both counts.  The version of Nev. Rev. Stat. § 193.165 in effect at the time required an
     equal and consecutive sentence for the use of a deadly weapon in addition to the sentence for the
28   primary offense.

1  changed anything.  Ground 6 does not present a substantial claim of ineffective assistance of trial

2  counsel.

3       Ground 7 is a claim that trial counsel should have requested an alibi instruction.  The

4  defense witnesses, petitioner and Sabrina Bradley, testified that petitioner was dropped off at the

5  Luxor hotel and casino, where he worked as a shoe shiner, and then that Sabrina Bradley and

6  Deborah Simpson drove with Davenport for a while until they dropped her off at a store.  To the

7  extent that an alibi is evidence that a defendant was someplace else at the time the crime was

8  committed, then petitioner had some evidence of an alibi.  If there is some evidence of an alibi, and

9  if the defendant requests it, then the court should give an alibi instruction to the jury.  Duckett v.

10  State, 752 P.2d 752 (Nev. 1988).  In this case, if there was an error, it did not prejudice petitioner.

11  On the one hand, the prosecution's case against petitioner relied almost entirely upon the eyewitness

12  testimony of Angela Davenport, the victim.  There was not much circumstantial evidence to support

13  the prosecution's case.  On the other hand, petitioner's evidence of an alibi was poor quality, partly

14  because petitioner did not present testimony of people who saw him at the Luxor,[6] and partly

15  because Sabrina Bradley's testimony was inconsistent with her initial statement to police.

16  According to the detective who interviewed her, Bradley said that she went with petitioner and

17  Davenport to Boulder City, and she witnessed petitioner throw Davenport over the edge.  Ex. 9, at

18  123-24 (#25).  The question of petitioner's alibi became subsumed into the question of which

19  witness the jury would believe.  The jury believed Davenport and did not believe petitioner and

20  Bradley.  A specific instruction on an alibi would not have changed that result.  Consequently,

21  ground 7 does not present a substantial claim of ineffective assistance of trial counsel.

22       IT IS THEREFORE ORDERED that respondents motion to dismiss (#57) is **GRANTED**.

23  Grounds 1, 5, 6, 7, and 9 of the third amended petition (#53) are **DISMISSED** with prejudice as

24  procedurally defaulted.

25  ///

26

27

28       [6]The lack of such evidence is the basis for another claim of ineffective assistance of counsel,
ground 4, in the third amended petition (#53).

-10-

1        IT IS FURTHER ORDERED that respondents shall have forty-five (45) days from the date

2  of entry of this order to file and serve an answer, which shall comply with Rule 5 of the Rules

3  Governing Section 2254 Cases in the United States District Courts.  Petitioner shall have forty-five

4  (45) days from the date on which the answer is served to file a reply.

5        DATED: August 27, 2013

6

7

                                                                _____

8                                                      KENT J. DAWSON
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-