# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RODNEY EUGENE DAVIS,

    Petitioner,

vs.

WARDEN, et al.,

    Respondents.

Case No. 2:05-cv-01179-KJD-NJK

**ORDER**

Before the court are the third amended petition for writ of habeas corpus (#53), respondents' answer (#82), and petitioner's reply (#83). The court finds that petitioner is not entitled to relief, and the court denies the petition.

This action has seen the original habeas corpus petition, three amended petitions, two motions to dismiss, and a stay while petitioner returned to state court to exhaust his remedies. The parties are well aware of the procedural history of this case.

As for the facts, briefly stated, petitioner was accused of taking Angela Davenport to Boulder City, Nevada, and throwing her down what he thought was a cliff but actually was a steep slope with a six-foot drop at the bottom. Petitioner's defense was an alibi, that at the time he was working as a shoe shiner at the Luxor Hotel and Casino in Las Vegas. Ultimately, petitioner was convicted of attempted murder with the use of a deadly weapon and first-degree kidnapping with the use of a deadly weapon.

The court had dismissed grounds 1, 5, 6, 7, and 9 of the third amended petition as procedurally defaulted. Among other arguments for cause and prejudice, petitioner had argued that

ineffective assistance of state post-conviction counsel was cause to excuse the procedural defaults. See Martinez v. Ryan, 132 S. Ct. 1309 (2012) (emphasis added).  The court determined that Martinez did not apply to the procedural defaults of grounds 5 and 9 because Martinez, by its very restrictive language, applied only to procedurally defaulted claims of ineffective assistance of trial counsel, and those grounds were not claims of ineffective assistance of trial counsel.  The court of appeals has since held that Martinez applies to claims of ineffective assistance of appellate counsel, which ground 5 is.  Ha Van Nguyen v. Curry, 736 F.3d 1287 (9th Cir. 2013).

The court will revisit its dismissal of ground 5, and the court concludes that petitioner had not presented substantial claims of ineffective assistance of appellate counsel.  First, petitioner argued in ground 5 that appellate counsel should have raised an issue that the jury pool did not represent a fair racial cross-section of the community and that there had been historical under-representation.  That was all that petitioner alleged.  Petitioner did not allege any facts indicating a reasonable probability that he would have had a different outcome on appeal if appellate counsel had raised the issue on trial.

Second, petitioner argued in ground 5 that appellate counsel should have raised an issue that the prosecutor was trying to shift the burden of proof onto petitioner.  Petitioner testified at trial that at the time he was accused of throwing Angela Davenport off of a cliff, he actually was at work at the Luxor Hotel and Casino shining shoes.  The prosecutor asked petitioner if he had any corroborating evidence, such as the testimony of the supervisor, named Larry, any pay stubs indicating the time, or any tax forms.  Eventually, the judge instructed the prosecutor to move on.  After the parties had rested their cases and before the arguments, the judge warned the prosecutor not to talk about Larry, time cards, or what petitioner had told the police.  The judge stated that petitioner had a Fifth Amendment right and that the prosecution had the burden of proof.

The warning by the trial judge aside, the court does not find that petitioner has presented a substantial claim of ineffective assistance of appellate counsel.  Petitioner has not alleged how the prosecution could have violated the Fifth Amendment.  The Fifth Amendment guaranteed petitioner the right not to testify, and it prohibited the prosecution from commenting on a decision by petitioner not to testify, but petitioner did testify.  The only possible Fifth Amendment issue was

1   petitioner's indication that he was not paying taxes on the money he was receiving from shining

2   shoes, but the judge did stop that questioning before it went any further.  Similarly, the prosecution

3   cannot try to shift the burden of proof onto the defense, but no decision of the Supreme Court of the

4   United States prohibits prosecutors from questioning a defendant who chooses to testify about the

5   strength of his alibi defense.  Indeed, in the context of federal criminal trials, the court of appeals

6   has held, "A prosecutor's comment on a defendant's failure to call a witness does not shift the

7   burden of proof, and is therefore permissible, so long as the prosecutor does not violate the

8   defendant's Fifth Amendment rights by commenting on the defendant's failure to testify." United

9   States v. Cabrera, 201 F.3d 1243, 1250 (9th Cir. 2000).  Appellate counsel would not have

10  succeeded with this issue on direct appeal.

11       Ground 7 was a claim that trial counsel provided ineffective assistance because trial counsel

12  did not request a jury instruction on alibi.  The court found that ground 7 was unexhausted.

13  Petitioner filed a new petition in the state district court.  Both the state district court and the Nevada

14  Supreme Court determined that Nev. Rev. Stat. §§ 34.726(1) and 34.810 barred consideration of

15  ground 7.  Petitioner returned to this court, which dismissed ground 7 as procedurally defaulted.

16  Petitioner now argues that the court should reconsider the determination of ground 7 as unexhausted

17  because petitioner filed a pro se appellate brief before the Nevada Supreme Court issued its order of

18  affirmance.  In finding that petitioner had not exhausted ground 7, the court stated:

19          Petitioner did not present this claim to the district court in his state habeas corpus petition.
            Petitioner did present the claim to the Nevada Supreme Court on appeal from the denial of
20          the petition.  See Ex. 51 (#27-12).  However, that presentation was procedurally incorrect
            because Petitioner first needed to raise the issue in the district court.  McNelton v. State, 990
21          P.2d 1263, 1276 (Nev. 1999).  A procedurally incorrect presentation does not exhaust the
            issue.  See Castille v. Peoples, 489 U.S. 346, 351 (1989); see also Casey v. Moore, 386 F.3d
22          at 916-18.

23  Order, at 6-7 (#44).  Petitioner has restated an argument that the court already had rejected, without

24  anything new that would cause the court to reconsider its determination in petitioner's favor.

25       Petitioner's reply also contains arguments regarding the procedural default of other grounds.

26  Petitioner admits that this is for the purpose of preserving the arguments for appeal, and this court

27  will take no further action on them.

28       Grounds 2, 3, 4, and 8 of the third amended petition (#53) remain.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 562 U.S. at 100.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Id. (citation omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

1    Ground 2 is a claim that the prosecutor committed misconduct in the closing argument by

2    personally denigrating the defense witness Sabrina Bradley.  The prosecutor stated:

3        Sabrina, why did she testify the way she did?  Was her testimony believable?

4        You know, maybe she didn't want to incriminate herself; maybe she's trying to protect
         herself, I don't really know.

5
         But I would ask you to discount everything she said.  I don't think there is a single word that
6        came out of her mouth that was truthful.

7    Ex. 9, at 263 (#25).[1]  The Nevada Supreme Court did not rule directly upon this claim, but the court

8    presumes that it rejected the claim on the merits.  Johnson v. Williams, 133 S. Ct. 1088 (2013).  In

9    argument the prosecutor can comment on witnesses' credibility as long as it does not amount to

10   personal vouching or denigration.  See United States v. Berger, 295 U.S. 78, 88 (1935).  Just before

11   the comment at issue, the prosecutor stated:

12       His [i.e., petitioner's] witness, Sabrina, she came in here and said that she didn't beat the
         victim.  The victim talked about how Sabrina and Diamond beat her over a period of time,
13       pretty severely, at the defendant's behest.

14       The defendant contradicted her [i.e., Sabrina's] testimony; said that she took part in the
         beating; that she's a crack head; she's a prostitute; and she doesn't tell the truth.
15
         Contradicted it—her testimony.
16

17   Ex. 9, at 262 (#25).  On cross-examination, the prosecutor confronted Bradley with her prior

18   statements to police that she did go with petitioner, Deborah "Diamond" Simpson, and the victim,

19   Angela Davenport, and that she witnessed petitioner throw Davenport off of a cliff.  Ex. 9, at 166-69

20   (#25).  The trial was only one day long, Bradley testified shortly before the prosecution's closing

21   argument, and her testimony would have been fresh in the jury's minds.  To summarize, Bradley

22   contradicted her own testimony, and petitioner's testimony contradicted Bradley's testimony.  Under

23   those circumstances, the Nevada Supreme Court reasonably could have determined that the

24   prosecutor was asking the jury not to believe Bradley based upon the evidence presented, not

25   because the prosecutor personally was denigrating Bradley.  Ground 2 is without merit.

26

27          [1]The transcript is in rough-draft format, with four pages of transcript on each scanned sheet
     of paper.  The court uses the rough-draft page numbers, not the page numbers generated by the
28   computer docketing system.

1    Reasonable jurists would not find this conclusion to be debatable or wrong, and the court

2    will not issue a certificate of appealability on ground 2.

3    Ground 3 is a claim that the evidence was insufficient to support the verdicts. "The

4    Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a

5    reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S.

6    358 (1970)). "[T]he relevant question is whether, after viewing the evidence in the light most

7    favorable to the prosecution, any rational trier of fact could have found the essential elements of the

8    crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). "[T]he

9    standard must be applied with explicit reference to the substantive elements of the criminal offense

10   as defined by state law." Id. at 324 n.16. On this issue, the Nevada Supreme Court held on direct

11   appeal:

> Davis's sole contention is that the evidence presented at trial was insufficient to support the jury's finding of guilt. In particular, Davis contends that the victim's "incredible tale" about the attack was unreliable and refuted by other evidence. Additionally, Davis contends that there was no evidence that he intended to kill the victim because she sustained no physical injuries. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact.
>
> The jury could reasonably infer from the evidence presented, including the testimony of the victim and the Boulder City police officers, that Davis kidnapped and attempted to kill the victim with the use of a firearm. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict.

19   Ex. 29, at 2-3 (#26) (footnotes omitted). In the third amended petition (#53), petitioner again argues

20   why Davenport's testimony was not credible. However, as the Nevada Supreme Court noted,

21   credibility is a determination for the jury to make. Davenport's testimony, if believed, was

22   sufficient for the jury to find petitioner guilty. Ground 3 is without merit.

23   Reasonable jurists would not find this conclusion to be debatable or wrong, and the court

24   will not issue a certificate of appealability on ground 3.

25   Ground 4 is a claim that trial counsel provided ineffective assistance because trial counsel

26   did not investigate petitioner's case properly. A petitioner claiming ineffective assistance of counsel

27   must demonstrate (1) that the defense attorney's representation "fell below an objective standard of

28   reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's

1  deficient performance prejudiced the defendant such that "there is a reasonable probability that, but

2  for counsel's unprofessional errors, the result of the proceeding would have been different," id. at

3  694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the

4  inquiry in the same order or even to address both components of the inquiry if the defendant makes

5  an insufficient showing on one." Id. at 697.

6      Establishing that a state court's application of Strickland was unreasonable under § 2254(d)
    is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly

7      deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The
    Strickland standard is a general one, so the range of reasonable applications is substantial.

8      Federal habeas courts must guard against the danger of equating unreasonableness under
    Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is

9      not whether counsel's actions were reasonable. The question is whether there is any
    reasonable argument that counsel satisfied Strickland's deferential standard.

10

11  Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

12      First, petitioner argues that counsel did not investigate two alibi witnesses, Steve Carter and

13  Larry Johnson, whom petitioner argues would have testified that petitioner was working at the

14  Luxor Hotel and Casino at the time of the events at issue. On this issue, the Nevada Supreme Court

15  held:

16      First, appellant claimed that his trial counsel was ineffective for failing to interview or call
    several witnesses to testify on his behalf. Appellant specifically alleged that these witnesses

17      would have testified that: (1) he never forced the victim into his car; (2) he was at work at
    the time the incident occurred; and (3) he was never at the alleged crime scene. Appellant

18      failed to demonstrate that his trial counsel was deficient or that such testimony would have
    altered the outcome of his trial. The record on appeal reveals that this information was

19      presented to the jury through the testimony of both the defendant and a defense witness.
    Accordingly, we conclude that the district court did not err in denying this claim.

20

21  Ex. 53, at 2-3 (#28). Petitioner has presented the affidavit of Ed Heddy, investigator for the Federal

22  Public Defender. Ex. 60 (#28). Heddy states that he personally contacted Jim Smith, the then

23  resident of Boulder City whom Davenport first contacted after her fall. Heddy also states that he

24  personally reviewed the medical records of the Boulder City Hospital emergency room. Heddy does

25  not state that he personally contacted Larry Johnson and Steve Carter; that part of his affidavit

26  repeats the allegations in the third amended petition. Other than providing trial counsel Johnson's

27  name in a handwritten list of potential witnesses, petitioner has never provided any information

28  from Johnson himself about petitioner being at the Luxor at the time of the events at issue.

-7-

1    Petitioner testified that he went into the Luxor to work on the night in question, that he worked with

2    Johnson, but not that he worked with Johnson on the night in question.  See Ex. 9, at 204-06 (direct

3    examination), 219-20 (cross-examination) (#25).

4           In support of his state habeas corpus petition, petitioner presented an affidavit from Steve

5    Carter.  Carter wrote that he saw Bradley and Simpson beat Davenport but that neither he nor

6    petitioner directed or participated in the beating.  Carter then wrote:

7           "Shortly after, Chocolate and Ms. Davenport followed Mr. Davis, Ms. Bradley, and Ms.
            Simpson to the am/pm [convenience store] located in front of the Luxor Hotel and Casino.  I
8           followed Chocolate and Ms. Davenport.

9           "Ms. Davenport got into the car with Ms. Simpson and Ms. Bradley and drove away.  Mr.
            Davis and I then entered the Luxor, where Mr. Davis began his shift."
10

11   Ex. 36, internal Ex. 2A (#26).  Three people testified about their personal recollections of events at

12   the apartment and the area around the Luxor:  Davenport, Bradley, and petitioner.  None of them,

13   either in direct examination or cross-examination, ever mentioned the presence of Carter.  These

14   were not disciplined witnesses.  Their testimonies continuously spun off into irrelevancies, and yet

15   nowhere in those streams and whorls of consciousness did Carter surface.  By his affidavit, Carter

16   appears exactly when the critical events of this case begin, and then he disappears immediately after

17   petitioner enters the Luxor, without any explanation of what happened afterward.  Even if

18   petitioner's counsel did not investigate this matter, any reasonable counsel would have to question

19   the reliability of a witness whose only involvement with the case is exactly during the time that

20   petitioner needed him involved for an alibi, and for no other time, and who is not remembered by

21   anybody else.

22          If Carter had testified, he would have done further damage to the alibi that Bradley provided

23   him.  Bradley testified that she, Simpson, Davenport, and petitioner went to the Luxor itself in one

24   car.  There, petitioner left the car to go to work.  Bradley then testified that she, Simpson, and

25   Davenport drove away.  Ex. 9, at 154-55 (#25).  Carter wrote that Simpson, Bradley, and petitioner

26   drove to the convenience store across Las Vegas Boulevard from the Luxor in one car.  A woman

27   named "Chocolate" and Davenport followed in a second car.  Then Carter followed in a third car.

28   At the convenience store, petitioner exited the first car.  Davenport exited the second car, entered

the first car, and the second car and Chocolate leave the narrative.  Carter left his car, and he and
petitioner walked across the street to the Luxor.  Bradley's version had one car that went to the
Luxor itself.  Carter's version had three cars going to a convenience store across the street and a
shuffling of passengers.  These are the types of inconsistencies for which a prosecutor easily could
argue that the jury should not believe either version.

Bradley's testimony, although impeached by her earlier statement to police and contradicted
by petitioner's own testimony, had value.  It is undisputed that Davenport was in Boulder City, with
injuries.  The question was how Davenport went to Boulder City.  Davenport testified that
petitioner, Simpson, and Bradley drove her there, and that petitioner threw Davenport over what
looked like a cliff in the darkness but was really a steep slope with a six-foot drop at the end.
Petitioner did not need to prove anything and could have argued that Davenport's testimony by itself
was unbelievable, but Bradley's testimony could supply an alternative explanation how Davenport
went to Boulder City.  Bradley testified that she and Simpson drove around, with Davenport
supposedly giving directions to a place where she could spend the night.  Bradley then testified that
after a while, she and Simpson suspected that Davenport was running them around, and they told
Davenport to get out of the car.  By that time, they were thoroughly lost.  For people who lived in
the middle of Las Vegas, Boulder City is far away, many of the streets curve around the slopes of
the mountains, and it would be easy for a person unfamiliar with the town to become lost.
Davenport might have become disoriented and fell down the slope, or she might have been attacked,
but that was not important for the defense.  What was important for the defense was an explanation
how Davenport went to Boulder City without petitioner being present.

If Carter had testified, he also would not have furthered petitioner's alibi beyond the entry to
the Luxor.  Petitioner had testified that earlier in the evening Simpson had driven him to the Luxor
for him to work.  However, nobody else was at the shoe shine station, and he did not have the key to
the shoe shine box with him.  He called Simpson on her cell phone, and she picked him up within
minutes.  Ex. 9, at 188-90 (#25).  Nothing in Carter's alibi testimony would have diminished
petitioner's admitted ability simply to walk back out of the Luxor after Carter saw him enter.

Also in ground 4, petitioner argues that counsel did not contact Jim Smith, who was the first person Davenport contacted after her fall, and that counsel did not review the medical records of the Boulder City Hospital emergency room.  Investigator Heddy relates that Smith told him that no defense investigator ever contacted him, but nowhere in Heddy's affidavit does he state what Smith's testimony would have been.  Petitioner does not allege in the third amended petition what Smith's testimony would have been.  Petitioner did not allege in his state habeas corpus petition what Smith's testimony would have been.  The Nevada Supreme Court reasonably could have concluded that a lack of investigation of Smith was not ineffective assistance of counsel.

On the matter of Boulder City Hospital records, petitioner argues that counsel should have used this to show discrepancies in Davenport's recollection of how many people were involved and to show that she had no comment regarding super glue being placed on her lips.  Counsel and petitioner did a fairly good job of debunking Davenport's claim by themselves.  Petitioner expressed incredulity that Davenport could have opened her mouth without tearing her lips if indeed they were super glued shut, given the known strength of super glue.  Respondents, on the other hand, presented evidence of a police officer's experience that the substance found around Davenport's lips was consistent with super glue, and the police found a partially-used tube of super glue in the search of petitioner's apartment.  The problem for petitioner is that the super glue was a tangential issue to the crimes of attempted murder and kidnapping.  The Nevada Supreme Court reasonably could have concluded that not investigating the medical records was not ineffective assistance of counsel. Ground 4 is without merit.

Reasonable jurists might find the court's conclusions to be debatable, and the court will issue a certificate of appealability for ground 4.

Ground 8 has two claims of ineffective assistance of counsel regarding an expert witness. First, Petitioner argues that counsel should have retained an expert witness to testify about the effects of the medications and controlled substances that Davenport had ingested, specifically how those substances could have affected her perception of events.  The Nevada Supreme Court did not mention this part of ground 8 in its order, but it reasonably could have concluded that counsel did not perform deficiently by not retaining an expert regarding Davenport's drug use.  Counsel himself

-10-

1   questioned Davenport about the medications and controlled substances that she had been ingesting,

2   including marijuana and cocaine.  These were not strange drugs with obscure names.  The jurors

3   could use their own knowledge as to what the effects of the drugs would be.

4           Second, Petitioner argues that counsel should have retained an expert witness to testify about

5   the effects of the drugs that petitioner himself had ingested.  If petitioner was under the influence of

6   drugs, he argues, then he might not have been able to form the specific intent required for first-

7   degree kidnapping and attempted murder.  The court agrees with respondents that this part of

8   ground 8 is unexhausted but also without merit.  See 28 U.S.C. § 2254(b)(2).  Petitioner did not

9   present in support of his petition the affidavit of any expert who could have testified what the effects

10  of his substance abuse would be upon the ability to form specific intent.  See Wildman v. Johnson,

11  261 F.3d 832, 839 (9th Cir. 2001) (citing Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997)).

12  Ground 8 is without merit.

13          Reasonable jurists might find the court's conclusions to be debatable, and the court will

14  issue a certificate of appealability for ground 8.

15          To appeal the denial of a petition for a writ of habeas corpus, petitioner must obtain a

16  certificate of appealability, after making a "substantial showing of the denial of a constitutional

17  right."  28 U.S.C. §2253(c).

18          Where a district court has rejected the constitutional claims on the merits, the showing
            required to satisfy §2253(c) is straightforward:  The petitioner must demonstrate that
19          reasonable jurists would find the district court's assessment of the constitutional claims
            debatable or wrong.  The issue becomes somewhat more complicated where, as here, the
20          district court dismisses the petition based on procedural grounds.  We hold as follows:
            When the district court denies a habeas petition on procedural grounds without reaching the
21          prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at
            least, that jurists of reason would find it debatable whether the petition states a valid claim of
22          the denial of a constitutional right and that jurists of reason would find it debatable whether
            the district court was correct in its procedural ruling.

23

24  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077-79 (9th

25  Cir. 2000).

26          The court dismissed grounds 1, 5, 6, 7, and 9 as procedurally defaulted.  Given the newness

27  of the Supreme Court's decision in Martinez v. Ryan, plus the subsequent expansion of that decision

28

1   in <u>Ha Van Nguyen v. Curry</u>, the court finds that petitioner has met the standard for a certificate of

2   appealability on those grounds.

3          IT IS THEREFORE ORDERED that the third amended petition (#53) is **DENIED**.  The

4   clerk of the court shall enter judgment accordingly.

5          IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** for the denial

6   of grounds 4 and 8 on the merits, and for the dismissal of grounds 1, 5, 6, 7, and 9 as procedurally

7   defaulted.

8          DATED: September 23, 2015

9

10                                                    _____

11                                                    KENT J. DAWSON
                                                      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28